OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
In 1979, plaintiff leased commercial space from defendant- *794 appellant with the intention of operating a restaurant on the premises. Under the parties’ lease, plaintiff was licensed to construct and operate a sidewalk cafe adjacent to the leased premises, provided that its use of the licensed space conformed to local and State legal requirements, as well as to the requirements of the lease. Soon after plaintiff’s occupancy began, a dispute between the parties arose concerning plaintiff’s alleged violation of the lease provisions prohibiting the generation of offensive odor and noise. The dispute spawned litigation, which was terminated, at least provisionally, by a stipulation and a "supplementary stipulation” requiring plaintiff to take certain specific steps to eliminate any odor or noise problem.
The present dispute concerns defendant’s refusal to execute the documents necessary to enable plaintiff to obtain the municipal licenses and permits required for its planned sidewalk cafe. After numerous efforts by plaintiff to obtain defendant’s cooperation proved unsuccessful, plaintiff commenced this action for, among other things, injunctive relief and lost profit damages. The gist of plaintiff’s claim was that by its obstructionist conduct defendant had breached its obligations under the lease provisions licensing plaintiff to construct a sidewalk cafe. Defendant sought dismissal of plaintiff’s breach of contract cause of action, contending that it had no obligations under those lease provisions as long as plaintiff was not in compliance with the lease’s noise and odor provisions and the terms of the subsequent stipulations.
Following a trial, the court rejected defendant’s contention, concluding instead that the lease provisions licensing plaintiff to construct a sidewalk cafe were not dependent, either under the lease or under the stipulations, upon plaintiff’s compliance with the provisions governing the generation of noise and odors. Accordingly, defendant could not avoid its obligation to execute whatever documents were necessary for plaintiff’s sidewalk cafe, notwithstanding its ongoing complaints about offensive noises and odors emanating from the plaintiff’s existing restaurant. The question of plaintiff’s alleged lost profits was submitted to the jury, which returned a verdict in favor of plaintiff awarding $1,571,385 in damages. The Appellate Division affirmed, without opinion, and granted defendant leave to appeal to this court.
The courts below correctly rejected defendant’s contention that its lease obligation to cooperate with plaintiff in the construction of its sidewalk cafe was dependent upon plain *795 tiffs correction of the alleged noise and odor problem. Whether the nonrent covenants of a lease are mutually dependent upon or independent of each other is a question to be determined "by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication.” (Rosenthal Paper Co. v National Folding Box & Paper Co., 226 NY 313, 320; see, e.g., Broad Props. v Wheels Inc., 43 AD2d 276, affd 35 NY2d 821.)
Here, there was nothing in the lease to suggest that plaintiffs right to construct a sidewalk cafe was dependent upon its compliance with the lease’s antinoise and odor provisions. Indeed, the conclusion that no such condition was intended is reinforced by the fact that the lease expressly conditioned the use of the licensed sidewalk cafe premises upon plaintiffs compliance with the other lease provisions. Moreover, it is apparent from an analysis of the lease as a whole that the only intended remedies for violations of the noise and odor provisions were lease termination and/or a lawsuit for damages and injunctive relief.
Nor did either of the two stipulations on which defendant relied alter the basic relationship among the various lease covenants or otherwise render defendant’s obligations with respect to plaintiff’s planned sidewalk cafe dependent upon plaintiffs compliance with other lease clauses. To the conr trary, the stipulations, which were principally concerned with imposing a timetable for plaintiff to take certain noise and odor abatement measures, made express reference to the continuing validity of the lease, and the "supplementary stipulation” specifically reiterated defendant’s obligation to cooperate in the construction of the sidewalk cafe. Defendant’s remaining arguments on this point are unpreserved and therefore cannot be considered on this appeal.
Finally, defendant’s contention that plaintiffs claim for lost profits was too speculative to permit a damage award (see, Kenford Co. v County of Erie, 67 NY2d 257; see also, 73 NY2d 312) must fail. Plaintiff established at trial that it was already operating a successful restaurant business at a commercially desirable site. Further, plaintiffs witnesses gave evidence, based upon experience, as to the level of profits that could reasonably be anticipated from the addition of a sidewalk cafe. Unlike in Kenford, where lost profits from a municipality’s decision not to construct a stadium were denied in part because there were too many undetermined variables, in this case most of the variables that would affect the success of the *796 thwarted business venture, i.e., location, capitalization and existing or potential clientele, were established through competent proof. Thus, the evidence at trial was sufficient to remove plaintiff’s lost profit claim from the realm of impermissible speculation.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed, with costs, in a memorandum.